# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA for the
use and benefit of ROACH CONCRETE, INC.

       Plaintiff,

  v.                                              Case No. 10-C-0826

VETERAN PACIFIC, JV, OLD VETERAN
CONSTRUCTION, INC., PACIFIC CONSTRUCTION
SERVICES, INC., and HARTFORD ACCIDENT
& INDEMNITY COMPANY

       Defendants.

## DECISION AND ORDER

Veteran Pacific, JV, a joint venture between Old Veteran Construction, Inc., and Pacific Construction Services, Inc. (collectively Veteran-Pacific), was the prime contractor for the construction of a new United States Army Reserve Center in Menasha, Wisconsin. Because the United States was the client, the project was covered by the Miller Act, which grants federal courts exclusive jurisdiction. 40 U.S.C. § 3133(b)(3)(B). The contract was with the U.S. Army Corps of Engineers, and Hartford Accident & Indemnity Company supplied the surety bond for the project which is required by the Miller Act. Veteran-Pacific entered into a subcontract with Roach Concrete, Inc., for concrete work on the project. Roach filed this suit against the Veteran-Pacific, claiming it is still owed $586,098.10 for concrete work it performed. Roach's claims against Veteran-Pacific are for breach of contract, unjust enrichment, and quantum meruit. Roach's claims against Hartford arise under the Miller Act and Section 628.46 of the Wisconsin Statutes. The case

is before the Court on the defendants' motion to dismiss under Fed. R. Civil P. 12(b)(6). For the reasons set forth below the motion will be granted in part and denied in part.

**FACTS ALLEGED**

Roach alleges in its complaint that on or about July 25, 2007, Veteran-Pacific contracted with Roach to provide labor and material for the new Army Reserve center construction project. The parties executed a subcontract. (Compl., ¶ 10; Ex. A.) In the subcontract the parties agreed to a one year statue of limitations. Section 8.6 of the subcontract specifies that: "[a]ny action [by Roach] resulting from any breach on the part of Veteran-Pacific as to materials or labor provided hereunder must be commenced within one (1) year after the cause of action has accrued." (Compl. Ex. A.)

Roach performed a significant amount of concrete work on the veteran's center in 2007 and 2008 and was paid over $1.3 million by the Veteran-Pacific. (Compl., Ex. E.) Veteran-Pacific did not object to pay applications submitted by Roach but "consistently refused to make payment in full when due to Roach." (Compl. ¶ 14.) As of March 12, 2008, Roach had submitted seven pay applications to Veteran-Pacific. Later that month Roach sent a letter to Veteran-Pacific concerning the overdue payments. (*Id.*) Veteran-Pacific did not respond satisfactorily and Roach submitted a notice of claim and demand for payment to Veteran-Pacific on June 11, 2008. (Compl. 15.) On September 23, 2008, having received no satisfaction from Veteran-Pacific, Roach submitted an Affidavit of Claim (the "Affidavit of Claim") to Hartford for $586,098.10, the amount Roach believed Veteran-Pacific still owed. (Compl., ¶ 17; Ex. E.)

Roach continued to perform work on the Army Reserve project after the Affidavit of Claim was submitted to Hartford. (Compl. ¶ 18; Roach Response Br., Dkt. 18 at 5.) Roach alleges in its

2

complaint that it "completed the furnishing of . . . concrete materials and labor on September 27, 2009. (Compl. ¶ 18.) Roach filed the complaint in this action on September 22, 2010.

**ANALYSIS**

The standards governing a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure are well established. Rule 8(a) of the Federal Rules of Civil Procedure requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." In deciding whether it is sufficient to state a claim, the court must "accept[ ] the complaint's well-pleaded allegations as true and draw[ ] all favorable inferences for the plaintiff." *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). The allegations must be sufficient "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests. " *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . . Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* (citations omitted).

Generally, a court must limit its review to the allegations of the complaint in deciding a Rule 12(b)(6) motion to dismiss. When matters outside the pleadings are presented to and not excluded by the court, the motion should be treated as one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). An exception to this rule exists, however, as to documents that are referred to in the complaint and that are central to the plaintiff's claim. The court may consider those kinds of

documents without converting the motion to one seeking summary judgment. *Hecker v. Deere & Co.*, 556 F.3d 575, 582 (7th Cir. 2009). If the plaintiff fails to attach such documents to the complaint, the defendant may submit them in support of his Rule 12(b)(6) motion to dismiss. *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir.2002). And where the authenticity of such a document is undisputed, "[t]he court is not bound to accept the pleader's allegations as to the effect of the exhibit, but can independently examine the document and form its own conclusions as to the proper construction and meaning to be given the material." 5 WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE: Civil 2d, § 1327 at 766 (1990); *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002).

**I. Breach of Contract**

Count II of the Complaint asserts a breach of contract claim against Veteran-Pacific. (Compl. ¶¶ 26-29.) The defendants move to dismiss the claim on the ground that it is barred by the one-year statute of limitations contained in Roach's subcontract with Veteran-Pacific. The subcontract provides that Roach had one year "after the cause of action has accrued" to file a claim. (*See* Compl. Ex. A, Subcontract, § 8.6.) Defendants argue that the cause of action accrued on September 23, 2008, and that Roach therefore had until September 23, 2009, in which to file suit. Since Roach did not file suit until September 22, 2010, Veteran-Pacific contends Roach's suit is barred. Roach, on the other hand, contends that the breach of contract claim did not accrue until September 27, 2009, when it completed work on the project, and that its action is therefore timely.

The question of when a state law claim accrues is governed by state law. Although the subcontract contains an Illinois choice of law provision, this provision is overridden by Wisconsin

law. *See* Wis. Stat. § 779.135(2) (contracts for the improvement of land in Wisconsin may not contain provisions subjecting such contracts to the laws of another state). Thus, I must look to Wisconsin law to determine when Roach's breach of contract claim accrued. In Wisconsin a cause of action accrues when "there exists a claim capable of present enforcement, a suable party against whom it may be enforced, and a party who has a present right to enforce it." *Lajsic v. Perkins,* 109 Wis. 2d 688, 688, 325 N.W.2d 738, 738 (Wis. Ct. App. 1982). In a breach of contract action, the limitations period commences to run on the date of the breach. *Id.* This is true whether or not the facts of the breach are known by the party having the right to the action. *State v. Holland Plastics Co.,* 111 Wis. 2d 497, 504, 331 N.W.2d 320, 324 (1983).

The defendants contend that it is clear from the complaint that Roach's breach of contract claim accrued on or before September 23, 2008. In support of this contention, the defendants cite the Affidavit of Claim Roach filed with Hartford on September 23, 2008, which is attached to the complaint. (Compl. Ex. E.) By submitting the Affidavit of Claim, defendants argue, Roach must have believed it was owed $586.098.10 as a result of a breach on or before that date. Otherwise why would Roach have filed an Affidavit of Claim? Defendants also note that Roach is now seeking the exact same amount – $586.098.10 – in the present lawsuit. Defendants argue that because Roach is seeking the same amount now (in 2010) that it sought then (in 2008) the claim must have first accrued in 2008.

But Roach's Affidavit of Claim is not conclusive evidence that Roach's claim for breach accrued as of September 23, 2008. Roach may have filed its claim with Hartford prematurely. A breach occurs when a party, without legal excuse, fails to perform any promise that forms the whole or part of a contract. 23 WILLISTON ON CONTRACTS § 63:1 (4th ed.). "Generally there can be no

5

breach of a promise until all the conditions qualifying it have happened or been performed." *Id.* § 63.6. Roach's contract called for periodic payments as the work was completed. Roach's right to receive monthly payments, however, was conditional, not absolute, and also subject to a retainage:

> Monthly payments shall be made based on 90% of the percentage of the work performed and completed by Subcontractor and approved by Veteran-Pacific, architect/engineer and/or owner, but subject to payment being made by the owner to Veteran/Pacific, less the aggregate of previous payments to Subcontractor. These payments are conditioned upon Subcontractor furnishing to Veteran-Pacific the proper waivers of lien, affidavits, sworn statements listing all contracts let and to be let and obligations due to or to become due for equipment, materials, labor and services and under subcontracts entered into by Subcontractor, and other evidence establishing that all services, labor material, equipment and rentals used or incorporated in and about said work or stored on the site have been paid in full.

(Subcontract Agreement ¶ 2.2, Compl. Ex. A.)

Roach's complaint is silent as to whether all of the conditions precedent to the obligation to pay were fulfilled as of September 23, 2008. Specifically, there is no allegation that the work Roach had performed by that time had been approved by Veteran-Pacific, the architect/engineer and/or owner, or that the owner had paid Veteran/Pacific. Nor is there any allegation that Roach had provided to Veteran/Pacific the proper waivers of lien and other documents required by the subcontract as a condition of payment. Thus, the Court is unable to determine from the complaint alone whether Roach's claim for breach of contract was readily enforceable when Roach filed its Affidavit of Claim with Hartford on September 23, 2008.

More importantly, even if the statute of limitations ran as to Roach's claim for one of the periodic payments to which it may have been entitled under the contract, this does not mean that Roach cannot sue for breach of Veteran-Pacific's more general promise to pay it the full amount it

6

promised. Veteran-Pacific agreed to pay Roach $1.325 million for its work on the project, plus compensation for any additional work "as may be authorized and directed by Veteran-Pacific. (Subcontract Agreement ¶¶ 2.1, 4.1, Compl. Ex. A.) The contract also gave Roach the right to receive periodic payments for its work. Nothing in the language of the contract, however, suggests that a failure by Roach to apply for or receive a periodic payment bars it from seeking payment in full for the work it performed after the project was completed. Periodic payments are for the benefit of the contractor so that it is not required to wait for the completion of a project before it receives compensation for its work. But unless the owner repudiates the contract, a contractor does not lose its right to recover for its work by waiving its right to receive periodic payments. *See, e.g., Hubble v. Lone Star Contracting Corp.,* 883 S.W.2d 379, 381-82 (Tex. App. 1994) ("[A] construction contract continues until the work is completed by the contractor, with periodic progress payments made by the owner to the contractor based on estimates of the value of work completed in each period. . . . Limitations begin[ ] to run on a continuing contract at the earlier of the following: (1) when the work is completed; (2) when the contract is terminated in accordance with its terms; or (3) when the contract is anticipatorily repudiated by one party and this repudiation is adopted by the other party."). In this respect, a construction contract that provides for periodic payments over the course of a project differs from an annuity or a pension in which the annuitant or pensioner has already completed his performance before his right to periodic payments arises. *See Jensen v. Janesville Sand & Gravel Co.,* 141 Wis.2d 521, 527, 415 N.W.2d 559 (Ct. App. 1987.) ("Because the right to receive periodic payments under a pension is a continuing right, the statute of limitations runs from the time when an installment is due under the pension."); *see also Segal v. Hurwitz* 114

Wis.2d 471, 491, 339 N.W. 2d 333, 343 (Ct. App. 1983) ("If the promisor has a continuing duty to perform, generally a new claim accrues for each separate breach.").

It thus follows that Veteran-Pacific is not entitled to dismissal of Roach's breach of contract claim on the ground that it is barred by the statute of limitations contained in the subcontract. Accordingly, Veteran-Pacific's motion to dismiss is denied as to that claim.

**II. Miller Act Claim**

Roach has also asserted a Miller Act claim against Hartford, the supplier of the surety bond for the construction project. (Compl. ¶¶ 20-25.) Under the Miller Act a first-tier subcontractor with a direct contractual relationship with the prime contractor may bring a claim if full payment to the subcontractor has not been made within 90 days of the last date that labor or materials were furnished. 40 U.S.C. § 3133. A Miller Act claim must be brought within one year from the last day that the claimant furnished material or labor. *Id.* § 3133(b)(4). Post-completion work does not stay the one-year statute of limitations. *Id.* In its complaint, Roach alleges that it "completed the furnishing of the . . . materials and labor on September 27, 2009." (Compl. 18.) It is undisputed that Roach filed this action within a year of that date.

The key issue for purposes of the Miller Act claim is not when a breach "accrued" but rather the last date on which Roach *supplied material or labor* to the Joint Venture. Hartford suggests that because Roach claimed $586.098.10 in 2008 and then claimed the exact same amount in 2009, it necessarily follows that Roach must not have performed any work or provided any material between 2008 and 2009. Accepting this argument would require the Court to draw factual inferences in favor of Hartford which, for purposes of a motion to dismiss, would be improper. The mere fact

that Roach claims it was owed the same exact amount on two different dates does not preclude the possibility that Roach did continue to supply material or labor between those two days. There may be an accounting error or adjustment. Roach may have forgotten to add additional material or labor to its second claimed amount. At this stage the Court must draw those inferences in Roach's favor. Because this Court must accept as true Roach's allegation that the last day it supplied materials or labor was September 27, 2009, the Court cannot conclude that Roach's Miller Act claim is barred by the Act's one-year statute of limitations.

Finally, Hartford argues that because it is secondarily liable to Roach, it is entitled to rely on the defenses asserted by its bond principal, Veteran-Pacific. This includes Veteran-Pacific's defense based on the one year from accrual claim limitation found in the subcontract language. Because I have already rejected Veteran-Pacific's argument that Roach's claim against it is barred by the contractual statute of limitations, this argument necessarily fails for Hartford also. But this argument fails for an additional reason as well. Hartford assumes that coextensive liability between a surety and its principal is in every case defined and limited by the principal's contractual liability. This is not automatically the case in Miller Act claims. *See U.S. for Use and Benefit of Walton Technology, Inc. v. Weststar,* 290 F.3d 1199, 1206 (9th Cir. 2002)(noting "[i]n the context of Miller Act cases, however, we must look beyond the principal's contractual liability, to the Miller Act itself, in defining the limits of coextensive liability between a surety and its principal."); *see also Mai Steel Service, Inc. v. Blake Construction Co.,* 981 F.2d 414, 417(9th Cir.1992) (holding that "the subcontractor's ability to recover did not hinge . . . on . . . the terms of the underlying contract" but rather "depended entirely on whether the claim fell within 'the language of [the Miller Act], interpreted in light of its protective purpose.'"). The Miller Act provides a federal cause of action,

and the rights and remedies available under it are matters of federal, not state, law. *F.D. Rich Co. v. U.S. ex rel. Indus. Lumber Co.,* 417 U.S. 116, 127 (1974). The Miller Act is also "highly remedial in nature." *U.S. for Benefit and on Behalf of Sherman v. Carter,* 353 U.S. 210, 216 (1957). As such, it is "entitled to a liberal construction and application in order properly to effectuate the Congressional intent to protect those whose labor and materials go into public projects." *Id.* Therefore "[w]here subcontract terms [affect] the timing of recovery or the right of recovery under the Miller Act, enforcement of such terms to preclude Miller Act liability contradict the express terms of the Miller Act." *U.S. for Use and Benefit of Walton Tech.,* 290 F.3d at 1207. The Miller Act conditions payment of the subcontractor not on "accrual" of a contractual claim, but rather on the passage of time from completion of the work or provision of materials. For this reason Hartford cannot use the provision in the subcontract laying out a statute of limitations as a shield against potential Miller Act liability.

### III. Quantum Meruit and Unjust Enrichment Claims

In Count III and IV Roach asserts claims for quantum meruit and unjust enrichment against Veteran-Pacific. (Compl. ¶¶ 30-38.) The elements of an unjust enrichment claim are: (1) conferral of a benefit (2) with the knowledge of the party benefitted and (3) under circumstances where it is inequitable to permit the party to retain the benefit without payment. *Ramsey v. Ellis,* 168 Wis.2d 779, 784-85, 484 N.W.2d 331 (1992). A party may establish a quantum meruit claim by showing an implied contract to pay reasonable compensation for services rendered. *Id.* at 785, 484 N.W.2d 331. However, under Wisconsin law, claims for unjust enrichment and quantum meruit only apply where the services performed were not covered by the parties' contract, where the contract is invalid

or where the contract is unenforceable. *See Gorton v. Hostak, Henzl & Bichler*, 217 Wis.2d 493, 510 n. 13, 577 N.W.2d 617 (1998) (holding that when an "award is governed by the contract existing between the parties, quantum meruit and implied contract arguments are inapposite").

Defendants argue that Roach's claims for quantum meruit and unjust enrichment must be dismissed because Roach has incorporated by reference allegations that a contract existed between Roach and Defendants. (Br. in Support of Mot. to Dismiss, Dkt. 15 at 7.) Roach counters by arguing that "[o]bviously Counts III and IV are pleaded in the alternative or hypothetically." (Roach Resp. Br., Dkt. 18 at 6.) Here, I conclude the defendants have the better argument.

A plaintiff is permitted to plead in the alternative. *See* Fed. R. Civ. P. 8(e)(2) (stating that "a party may set forth two or more statements of a claim or defense alternately or hypothetically" and that a party may state "as many separate claims or defenses as the party has regardless of consistency"). And, it is well-established that a plaintiff may file a complaint based on an express or implied contract theory and alternatively on a quasi-contract or unjust enrichment theory. *See Western Machine Co. v. Consolidated Uranuim Mines, Inc.,* 247 F.2d 685 (1957); *Thorogood v. Sears, Roebuck & Co.,* 2006 WL 3302640, *5 (N.D. Ill. 2006) (stating that because a party may plead in the alternative, a plaintiff may plead "claims for breach of contract as well as unjust enrichment based in tort"); *AT&T Corp. v. Merchant Wired LLC,* 2006 WL 3076671, *7 (S.D. Ind. 2006) (stating that "[e]ven if an express contract exists, a plaintiff is allowed to plead a quantum meruit claim in the alternative in case the express contract is found to be invalid") (citing *Diversified Carting, Inc. v. City of New York,* 423 F. Supp.2d 85, 97-98 (S.D.N.Y. 2005)). Thus, while a plaintiff cannot recover simultaneously on both a contract and an unjust enrichment theory, such theories can be plead in the alternative. But that is not what Roach has done here.

Roach plainly incorporates allegations of the existence of a contract in both its claim for unjust enrichment and its claim for quantum meruit. Roach begins each claim by stating: "as described more fully above in paragraphs 1-19 . . . " and, this Court notes, paragraphs 8-19 specifically describe the details of the subcontract between Roach and the Joint Venture (Complaint ¶ 30; ¶ 35.) Nowhere on the face of the complaint does Roach state that its unjust enrichment or quantum meruit claims are made "in the alternative"; instead Roach directly references paragraphs of the complaint related to the existence of an express contract. Indeed, nothing in the complaint suggests any facts which would support the inference that Roach's relationship with Veteran-Pacific is not governed by a valid and enforceable contract. And the defendants essentially concede the existence of a valid contract between Roach and Veteran-Pacific in their motion to dismiss.

Under these circumstances, I conclude that dismissal of Roach's unjust enrichment and quantum meruit claims is appropriate. Where a plaintiff asserts a breach of contract claim and fails to allege any facts from which it could at least be inferred that the contract on which that claim is based might be invalid, the plaintiff is precluded from pleading in the alternative claims that are legally incompatible with the contract claim. This is but an application of the rule that "[a] plaintiff pleads himself out of court when it would be necessary to contradict the complaint in order to prevail on the merits . . . ." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008) (quoting *Kolupa v. Roselle Park Dist.*, 438 F.3d 713, 715 (7th Cir. 2006)). Thus, based on its own complaint, Roach's claims for equitable relief fails. The dismissal is without prejudice, however. In the event it later appears that the contract on which Roach has sued may be void or unenforceable, Roach may seek leave to reassert them in an amended complaint.

**IV. Claim under Wisconsin Statute § 628.46**

The final count in Roach's complaint asserts that Hartford violated Wis. Stat. § 624.46(1) which requires the prompt payment of insurance claims "unless otherwise provided by law." The statute explains that an insurance "claim shall be overdue if not paid within 30 days after the insurer is furnished written notice of the fact of a covered loss and of the amount of the loss." (*Id.*) Hartford has not paid Roach even though Roach furnished Hartford with written notice of its claims via the September 23, 2008 Affidavit of Claim. (Compl. Ex. E.) Defendants argue that Roach's claim under Wis. Stat. § 628.46 must be dismissed because "Hartford is not responsible for any claim to Roach as otherwise provided by law." As discussed above, however Hartford may be liable to Roach under the Miller Act. For this reason Roach's claim under Wis. Stat. § 628.46 will not be dismissed.

**CONCLUSION**

For the reasons set forth above Defendants' motion to dismiss will be granted in part and denied in part. The motion to dismiss is **granted** as it relates to the quantum meruit and unjust enrichment claims against Joint Venture, Old Veteran and Pacific, and those claims (Count III and IV) are dismissed without prejudice. The motion to dismiss is **denied**, however, in all other respects. The Clerk is directed to set this matter on the Court's calendar for a Rule 16(b) conference forthwith.

**SO ORDERED** this    6th    day of April, 2011.

                                             s/ William C. Griesbach
                                             William C. Griesbach
                                             United States District Judge