# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA ex rel.
ROACH CONCRETE, INC.,

               Plaintiffs,

      v.                                                   Case No. 10-C-826

VETERAN PACIFIC JV,
OLD VETERAN CONSTRUCTION, INC.,
PACIFIC CONSTRUCTION SERVICES, INC.,
and HARTFORD ACCIDENT & INDEMNITY
COMPANY,

               Defendants.

## DECISION AND ORDER REGARDING MOTIONS IN LIMINE, MOTIONS TO STRIKE, AND CROSS MOTIONS FOR PARTIAL SUMMARY JUDGMENT

This is essentially a breach of contract action arising out of the construction of a new United States Army Reserve Center in Menasha, Wisconsin. Veteran Pacific, JV, a joint venture between Old Veteran Construction, Inc., and Pacific Construction Services, Inc. (JV), was the prime contractor for the project. Because the United States was the client, the project was covered by the Miller Act, which grants federal courts exclusive jurisdiction. 40 U.S.C. § 3133(b)(3)(B). The contract was with the U.S. Army Corps of Engineers (USACE), and Hartford Accident & Indemnity Company (Hartford) supplied the surety bond for the project which is required by the Miller Act. JV entered into a subcontract for the concrete work on the project with Plaintiff Roach Concrete, Inc. (Roach). Roach claims that Hartford and/or JV owes it $586,098.10 for concrete work performed.

Roach initially asserted claims against JV for breach of contract, unjust enrichment, and quantum meruit. The latter two claims were previously dismissed without prejudice, but Roach was granted leave to amend and realleged them as alternative claims in its amended complaint. (Am. Compl. ¶¶ 46-59, ECF No. 24.) Roach's claims against Hartford arise under the Miller Act and Section 628.46 of the Wisconsin Statutes, which requires timely payment of insurance claims.

The case is currently before the court on a series of motions with which the parties have bombarded the court. These include cross-motions for summary judgment, four motions to strike various submissions filed in support or opposition to summary judgment, and a motion in limine, likewise seeking to limit the evidence the court can consider in ruling on the summary judgment motions. The defendants seek summary judgment on Roach's contract and Miller Act claims on the ground that they are barred by a one-year statute of limitations. Roach, in turn, seeks partial summary judgment as to certain amounts it claims it is owed that are not in dispute. Roach also seeks partial summary judgment on JV's counterclaim against it on the ground that JV has failed to fully substantiate its claim that certain change orders were not authorized. For the reasons that follow, all motions to strike except one will be denied. Roach's motion in limine will also be denied, as will the parties' cross motions for summary judgment.

## MOTIONS TO STRIKE

The practice of filing motions to strike to challenge evidence recounted in a brief or affidavit has been severely criticized in this circuit. Confronted with a motion to strike portions of the appellee's brief on the ground that it contained unsupported factual assertions in *Custom Vehicles, Inc. v. Forest River, Inc.*, Chief Judge Easterbrook not only denied the motion but imposed a

2

sanction on the attorney who brought it. 464 F.3d 725 (7th Cir. 2006). In an in-chambers opinion, Judge Easterbrook explained that "the way to point out errors in an appellee's brief is to file a reply brief, not to ask a judge to serve as editor." *Id.* at 726. He noted that the Federal Rules of Appellate Procedure do not authorize such motions and, although the Federal Rules of Civil Procedure do, the Rule is limited to striking "from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). It does not apply to factual statements that are not adequately supported in the record. *Custom*, 464 F.3d at 726. Moving to strike such material unnecessarily adds to the rounds of briefing and thereby increases the time and expense to resolve the case.

This is not to say that motions to strike are never appropriate for other purposes. The defendants' first motion to strike is directed to an unsigned declaration by Roach's president filed in support of its motion for summary judgment. (ECF No. 53-7.) Rule 11 of the Federal Rules of Civil Procedure require that every pleading, written motion, and other paper filed with the court be signed. Fed. R. Civ. P. 11(a). The Rule states that "the court must strike an unsigned paper unless the omission is promptly corrected after being called to the attorney's or party's attention." *Id.* Here, the defendants called the defect to the attention of Roach when it filed its motion to strike. Had Roach promptly corrected the defect, the motion would have been denied. Instead, Plainitff filed an amended declaration in which it incorporated many of the same or similar assertions. (ECF No. 55-7.) The motion to strike the unsigned declaration (ECF No. 60) will therefore be granted.

The remaining motions to strike are denied, as is Roach's motion in limine. The arguments that the challenged paragraphs in the affidavits should be struck because they offer inadmissible evidence or violate the sham affidavit rule will be considered in deciding whether the cross motions

for summary judgment should be granted. The court declines JV's request that, in addition, it edit the affidavits submitted in opposition to its motion. Roach's motion in limine is likewise denied. Essentially, the motion requests that the defendants be prohibited from presenting documents and evidence in the case that has not previously been disclosed either in the initial disclosures required under Rule 26(a)(1) or during the Rule 30(b)(6) depositions conducted by Roach. The Rules already provide such relief, see Fed. R. Civ. P. 37(c), and thus there is no need to grant a motion in limine seeking the same.

## MOTIONS FOR SUMMARY JUDGMENT

### 1. Summary Judgment Methodology

A motion for summary judgment should be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Material" means that the factual dispute must be outcome-determinative under law. *Contreras v. City of Chicago*, 119 F.3d 1286, 1291 (7th Cir. 1997). A "genuine" issue must have specific and sufficient evidence that, were a jury to believe it, would support a verdict in the non-moving party's favor. Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The moving party has the burden of showing there are no facts to support the non-moving party's claim. *Celotex*, 477 U.S. at 322. In determining whether to grant a motion for summary judgment, the court should consider the evidence presented in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255. When the record, taken as a whole, could not lead a rational jury to find for the non-moving party, there is no genuine issue

4

and therefore no reason to go to trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

This district, like most, has enacted local rules that are intended to focus both the court and the parties on the essential question in deciding any motion for summary judgment, namely, whether there are genuine disputes as to any facts that are material to the disposition of the case.  Thus, the moving party is required to file along with the motion either a statement of material facts to which the parties have stipulated or a statement of proposed material facts as to which the moving party contends there is no material issue and that entitle the moving party to judgment as a matter of law. Civil L. R. 56(b)(1).  The statement of proposed facts is to consist of short numbered paragraphs and include within each paragraph specific references to the affidavits, declarations, or other parts of the record that support the fact set forth in that paragraph.  Civil L. R. 56(b)(1)(C)(i).  The party opposing the motion must then file a response to the moving party's statement of undisputed facts which is intended to make clear which, if any, of those facts are in dispute, and to set forth any additional facts that bear on the motion.  The opposing party's response must therefore reproduce each numbered paragraph of the moving party's statement of facts followed by a response to each paragraph, including when the fact is disputed, specific reference to the affidavit, declaration, or other part of the record that supports the claim that a genuine dispute exists as to the fact stated by the moving party.  Civil L. R. 56(b)(2)(B).  The local rule further provides that the court will deem uncontroverted statements of material fact admitted for purposes of deciding the motion for summary judgment.  Civil L. R. 56(b)(4).  When properly followed, the local rule governing motions for summary judgment allows the court to easily discern which facts are in dispute and, where the law permits, save both the parties and the court the time and expense of trial.

5

## 2. Undisputed Material Facts

Although both parties submitted statements that include many other facts, only the following are undisputed and material to the court's disposition of the motions before it. Effective July 25, 2007, JV entered into a subcontract with Roach to provide labor and materials for cast-in-place concrete and precast concrete on a project for the United States Army Reserve Center in Menasha, Wisconsin. Roach is wholly owned by Michael Roach. (Def.'s Statement of Undisputed Facts (DFOS), ECF No. 50, ¶¶ 16, 13.) A copy of the subcontract is attached to the amended complaint as Exhibit A. (ECF No. 24.) Under the terms of the subcontract, Roach was to be paid based on estimates prepared by Roach on American Institute of Architect (AIA) forms G702 and G703 based on work approved by JV and USACE, and conditioned on Roach providing JV proper waivers of lien, affidavits, sworn statements, and other evidence establishing that Roach had paid all of its subcontractors. Roach was also to tender its weekly certified payroll to JV. (ECF No. 50, ¶ 17a.) If Roach failed to pay or discharge any account relating to its work on the project, JV had the option of investigating and paying such bills or claims as it deemed proper and then deduct such payments, along with any expenses of its investigation using its best judgment. (ECF No. 50, ¶ 17b.) The contract also allowed JV to terminate Roach from the project upon two working days' notice if Roach failed to supply proper manpower to the project, failed to diligently prosecute its work, caused interference with the work of JV or other subcontractors, or was unable to pay its debts as they matured. (ECF No. 50, ¶ 17j.) All notices were to be mailed to Roach at its principal office at 3819 N. Cushman Road, Helenville, Wisconsin 53137. (ECF No. 50, ¶ 17n.) And any action against JV based on the subcontract had to be commenced within one year after the cause of action has accrued. (ECF No. 50 ¶ 17i.)

6

On or before March 20, 2008, JV became aware that Roach was not paying its subcontractors/vendors/suppliers for the project and sent Roach a notice informing it of its need to tender information and documentation to JV evidencing that it was not behind in its payments. Roach failed to comply with JV's notice. In fact, on March 24, 2008, Roach provided JV with correspondence indicating it had open invoices with its subcontractors that were at least 45 days old in the amount of $104,183. On March 24, 2008, Roach instructed its employees not to report for work on the project. As a result default notices were issued to Roach. (ECF No. 50, ¶¶ 18-23.)

On or about August 30, 2008, Roach submitted its last payment application to JV for its work on the project. On September 30, 2008, Roach submitted an affidavit of claim to Hartford in which Roach claimed that it was due $586,098 for the project. On October 10, 2008, Project Manager Michael Gerhardstein sent Roach a notice of termination stating that, effective immediately, Roach was terminated from the project for its failure to provide manpower for the project. (ECF No. 50, ¶¶ 27-31.)

Roach laid off its employees and stopped seeking new business by December 2008. (Roach Dep. 64:5-14, ECF No. 49-6.) Not long after, in March 2009, Michael Roach, the owner and president of Roach Concrete, filed a Voluntary Petition for Bankruptcy. Michael Roach listed his interest in Roach Concrete, Inc., in the schedule of personal property that was filed with the petition, but indicated it had no value. He also listed a "potential action against Old Veteran Construction and Pacific Construction" with an "unknown" value. (ECF No. 67, at 10-11.) The physical assets of Roach Concrete were sold off as part of the bankruptcy proceedings to pay Michael Roach's creditors; however, the trustee in bankruptcy did not pursue a Miller Act or breach of contract claim against JV or Hartford as part of those proceedings. Michael Roach received a discharge of his

7

personal liabilities on August 19, 2009. (ECF No. 67, at 1.) His company was dissolved on November 9, 2011. (ECF No. 50, ¶ 35.)

Notwithstanding the earlier termination of the contract, Michael Roach was contacted in early September 2009 by Bob Harden, a JV supervisor, and informed that the OWS unit concrete work was ready to be completed at the project site. Between September 22 and September 27, 2009, Michael Roach and former Roach employee Patrick Dougherty completed the concrete work on the OWS unit. Michael Roach did not pay Dougherty for his labor to complete this work. (Roach Dep. 257:15-22, ECF No.49-6.) Nor did Michael Roach submit a payment application to JV or Hartford for the work he completed on the OWS unit in September 2009 because he "didn't ever expect to get paid for it." (*Id.* at 251:16-24.) Instead, he completed the work because he "was trying to have payments released on previous pay applications." (*Id.* at 61:21-22.) He felt that his "best opportunity to receive past payments was to complete the contract." (*Id.* at 61:22-24.) A year later on September 22, 2010, Roach Concrete filed a complaint against JV for $586,098.10, the same amount claimed in its original affidavit of claim to Hartford two years before in September 2008.

### 3. Miller Act Claim

The defendants argue that Roach's Miller Act claim is barred by the one-year statute of limitations of the Miller Act. The Miller Act states that "[a]n action brought under this subsection must be brought no later than one year after the day on which the last of the labor was performed or material was supplied by the person bringing the action." 40 U.S.C. § 3133(b)(4). The defendants contend that JV's contract with Roach was terminated on October 10, 2008. Yet, Roach did not commence its action against Hartford until September 22, 2010, almost a full year after the

8

statute of limitations expired. Based on these facts, the defendants argue that Roach's Miller Act claim and corresponding Wis. Stat. § 628.46 claim are barred.

Roach argues that its Miller Act claim is not barred because the one-year statute of limitations did not expire before the action was commenced. Roach contends that it performed work on the project as late as September 27, 2009. That was the date Michael Roach and Roach employee Patrick Dougherty completed the OWS concrete work. Since the action was commenced within one year of that date, Roach argues, the defendants' motion should be denied.

The defendants counter that the work performed by Michael Roach and Dougherty in September of 2009 was not performed by or on behalf of Roach Concrete because the contract with Roach Concrete was terminated in October 2008 and Roach Concrete had ceased doing business. Citing *EraGen Biosciences, Inc. v. Nucleic Acids Licensing LLC*, 540 F.3d 694, 697 (7th Cir. 2008), they argue that once a contract is terminated, even wrongfully, there is no longer a contract. They also challenge the admissibility of the evidence Roach offers in support of its claim that it was asked to complete its work. Finally, the defendants also argue that whatever work Michael Roach and Dougherty performed in September 2009 was performed in their individual capacities and not on behalf of Roach Concrete. In fact, the defendants contend that Michael Roach admitted as much during his deposition. The defendants argue that his effort to avoid summary judgment by contradicting his sworn deposition testimony with a last minute declaration should be rejected under the sham affidavit rule.

It is true that JV notified Roach Concrete that its contract was terminated in October 2008. The evidence suggests, however, that JV may have retracted its termination of the agreement in late August or September of 2009, when Bob Harden contacted Roach and directed him to complete the

9

work called for under the contract. A party can retract a repudiation of a contract, *see* RESTATEMENT (SECOND) OF CONTRACTS, § 256, and presumably, the same is true of a termination. It would be incongruous to hold that JV could terminate the contract, later request performance by Roach Concrete, and thereafter continue to insist that the contract was no longer operative. Instead, were a jury to credit Michael Roach's testimony that he was in fact contacted by a person in authority at JV and asked to complete the contract, the jury could find that the termination was retracted. At least the defendants have offered no authority to the contrary. In that event, the statute of limitations on Roach's Miller Act claim would not have begun to run until Roach completed its work on September 27, 2009.

The defendants argue that Roach has failed to offer admissible evidence to support a finding that JV retracted its termination of the contract. They maintain that Michael Roach's statement that he was contacted by Harden is inadmissible due to lack of foundation. In his amended declaration, Michael Roach states "[a]s I testified in my deposition in this case, JV employee Bob Harden contacted me in September 2009 and notified me that the JV was ready for Roach Concrete to pour the concrete slab around the oil/water separator." (Roach Am. Decl. ¶ 17, ECF No. 55-3.) In his deposition, Michael Roach testified that he received the notice from "a Bob Harden e-mail." (Roach Dep. 252:4, ECF No. 55-5.) The defendants assert that because no email has been produced, there is inadequate foundation for his testimony. In addition, the defendants assert that there is inadequate foundation for any alleged conversations between Michael Roach and Harden. In support of its argument, the defendants rely on *Brown v. Chicago Transit Authority Retirement Plan*, No. 01 C 9340, 2005 WL 6295798 (N.D. Ill. Jul. 22, 2005), for the proposition that a "proper foundation for a conversation must include information as to when and where the conversation occurred, who was

10

present, and who said what to whom." *Id.* at *6. Unlike *Brown*, where the plaintiff's affidavit contained a statement that "an unspecified person told her at an unspecified time and place unspecified words," *id.*, Michael Roach's statement establishes that in September 2009, Harden contacted and notified him that the OWS unit was ready to be completed. The foundation here is sufficient. The defendants' argument goes to the weight of the evidence, not its admissibility.

The defendants also contend that even if Michael Roach was contacted by Harden in September 2009, the work he performed later that month was not performed on behalf of Roach Concrete. Michael Roach admitted as much, the defendants contend, when during his deposition he testified that when he completed the OWS work in September 2009, he "was not pursuing work with the Roach Concrete entity, but [he] finished the contract for which the Roach Concrete entity was responsible." (Roach Dep. 253:11-13, ECF No. 49-6.) In response to the defendants' motion for summary judgment, however, Michael Roach has now submitted a declaration in which he states that when he and Dougherty completed the OWS work in September 2009, he was completing Roach Concrete's obligations under the subcontract. (Roach Am. Decl. ¶ 20, ECF No. 55-3.) The defendants argue that Michael Roach's declaration should be struck by the court because it violates the sham affidavit rule.

"It is well established in this Circuit that, as a general rule, a party may not create an issue of fact by submitting an affidavit whose conclusions contradict prior deposition or other sworn testimony in the absence of . . . the unmistakable need to clarify prior ambiguous statements." *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 688 n. 5 (7th Cir. 2008) (citations omitted). Allowing a party to defeat summary judgment by submitting affidavits that contradict previous sworn testimony would defeat the very purpose of summary judgment. *Babrocky v. Jewel Food Co. & Retail*

11

*Meatcutters Union*, 773 F.2d 857, 861 (7th Cir. 1985) ("Otherwise the very purpose of the summary judgment motion-to weed out unfounded claims, specious denials, and sham defenses-would be severely undercut."). But the sham affidavit rule applies to exclude newly offered evidence only when a clear contradiction exists that is otherwise unexplained. *Walker v. Sheahan*, 526 F.3d 973, 979 (7th Cir. 2008). An inconsistent affidavit may prevent entry of summary judgment if the inconsistency is otherwise explained. *Miller v. A.H. Robins Co., Inc.*, 766 F.2d 1102, 1104 (7th Cir. 1985) ("An inconsistent affidavit may preclude summary judgment, however, if the affiant was confused at the deposition and the affidavit explains those aspects of the deposition testimony or if the affiant lacked access to material facts and the affidavit sets forth the newly-discovered evidence.").

This case does not call for application of the sham affidavit rule. First, there is no clear contradiction between Michael Roach's testimony and his deposition testimony. Michael Roach testified at his deposition that even though he was not pursuing new business for Roach Concrete, he did finish the work called for under Roach Concrete's contract with JV. It is unreasonable to read this testimony as an admission that he was offering his services separate and apart from the contract his company had entered into with JV. Though Roach Concrete may not have been doing business, it had not been dissolved at the time, nor had it filed for bankruptcy as Michael Roach had done individually. The distinction between an owner of a company acting in his personal capacity and the same person acting in his capacity as the owner/employee of the company is too subtle, especially for a lay witness, to support the application of the drastic remedy of striking a party's declaration as a sham.

12

In sum, the court is unable to conclude from the undisputed facts that Roach's Miller Act claim is barred by the one-year statute of limitations. Accordingly, the defendants' motion for summary judgment on that claim will be denied. And since the Miller Act claim survives, Plaintiff's claim under Wis. Stat. 628.46 will also continue.

**4. Breach Of Contract Claim**

The defendants' argument that Roach's breach of contract claim against JV is barred fails for much the same reason. As to this claim, the limitations period is governed by the contract, as opposed to a statute. Roach's contract with JV provides that "[a]ny action resulting from any breach on the part of Veteran Pacific as to materials or labor provided hereunder must be commenced within ONE (1) year after the cause of action accrues." (ECF No. 49-9 at 23, § 8.6.) JV asserts that Roach's cause of action accrued on any of three dates: (1) on October 10, 2008, when JV sent the notice of termination; (2) prior to June 11, 2008, when JV rejected Roach's submitted change orders; or (3) on August 30, 2008, when Roach submitted its final demand for payment to JV after it substantially completed work on the project. Since Roach did not file suit until September 22, 2010, JV contends it is barred.

The determination of when Roach's contract cause of action accrued is governed here by Wisconsin law. In Wisconsin, a cause of action accrues when "there exists a claim capable of present enforcement, a suable party against whom it may be enforced, and a party who has a present right to enforce it." *Crawford v. Shepherd*, 86 Wis. 2d 362, 365-66, 272 N.W.2d 401 (1978). For a cause of action arising under contract, the limitations period accrues on the date of the breach, whether or not the facts of the breach are known by the injured party. *State v. Holland Plastics Co.*, 111 Wis. 2d 497, 506, 331 N.W.2d 320 (1983). JV argues that Roach's cause of action accrued at

13

any of the three dates described above.  Roach at each point had a claim capable of present enforcement, a suable party against whom it could be enforced and a party with a present right to enforce it.

Roach essentially ignores JV's argument and instead contends that the court has already rejected JV's statute of limitations defense in its previous decision denying the defendants' motion to dismiss.  (Pl.'s Br. In Opp., ECF No. 55, at 6.)  But that is not true.  A motion to dismiss is decided on the basis of the allegations of the complaint and the documents it incorporates.  *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665-66 (7th Cir. 2013).  A motion for summary judgment, in contrast, considers matters outside of the pleadings. Fed. R. Civ. P. 12(d), and 56.  The fact that JV terminated its contract with Roach on October 15, 2008, was not part of the record before the court when it denied the defendants' motion to dismiss.  It is an undisputed fact before the court now.

The contract at issue undeniably gave Roach the right to receive periodic payments.  Thus, presuming that Roach's claim had merit, JV's failure to pay Roach once it demanded payment on August 30, 2008, would have constituted a breach of contract.  But while Roach could have elected to sue for breach of contract due to nonpayment at that time, it could also elect to waive the breach and continue its work under the contract.  *See Holmes v. Racine Furnace & Foundry Co.*, 185 Wis. 49, 200 N.W. 647, 648 (1924) ("When one party breaches a contract the other party may elect to rescind and sue on the breach, or he may elect to stand on the contract."); 14 WILLISTON ON CONTRACTS § 43:15 (4th ed.).  And assuming Roach did elect to continue the contract, the statute of limitations would not have begun to run until he completed his performance in September 2009.

JV argues that the fact that it terminated the contract changes the analysis.  When a contract is terminated, there is no longer a contract, *EraGen Biosciences,* 540 F.3d at 697, and it would seem

14

that the other party's only option upon termination is to sue for breach. But this reading is inconsistent with the plain terms of the contract which, upon termination of a subcontractor, made the subcontractor's right to receive further payments dependent upon the cost of completion of the subcontractor's remaining work. Section 9.3 of the contract provides:

> If Veteran Pacific so terminates the contract of Subcontractor, Subcontractor shall not be entitled to any further payments under this Agreement until Subcontractor's work has been completed and accepted by the owner, and payment has been received by Veteran Pacific from the owner with respect thereto. In the event that the unpaid balance exceeds Veteran Pacific's cost of completion, the difference shall be paid to Subcontractor, but if such expense exceeds the balance due, Subcontractor agrees to pay Veteran Pacific such excess within thirty (30) days after written demand for such excess has been made upon him by Veteran Pacific.

(Subcontract, ECF No. 24, Ex. A, at § 9.3.) Under this provision, a terminated subcontractor is not even entitled to final payment until all of the work called for in its contract is completed. Given this provision, it would be unreasonable to conclude that the statute of limitations on Roach's breach of contract claim began to run on notice of termination. For it was not until all work called for under Roach's subcontract was completed that his right to final payment even arose. To hold that the statute of limitations began to run on an earlier date would not only be unreasonable, it would also encourage piecemeal litigation.

It follows that Roach's breach of contract claim is not barred under the shortened statute of limitations contained in its contract with JV. The defendants' motion for summary judgment on this issue is therefore denied.

**5. Overhead, Profit, and Interest Change Orders.**

The defendants next argue that in the event Roach's claims survive, they are at least entitled to partial summary judgment disallowing his claims for overhead and profit on certain

15

change orders for insulated blankets (used to prevent freezing of newly poured concrete) and lost production. The defendants likewise argue that change orders for interest charges from Roach's bank are not authorized.

Roach does not dispute that interest charges are not a proper subject for a change order, but contends that overhead and profit are allowed for changes in the scope of the work or materials requested by the contractor. In support of its argument, Roach points to Section 4.4 of the subcontract which expressly allows for profit and overhead on changes in the work subject to several provisions.

Although the defendants argue that the general limitation of liability provision of the contract (§ 8.6) controls over the provision governing change orders, they also offer stronger arguments based on the specific language of contract governing change orders. For example, according to the contract, no change order is valid and eligible for payment unless it sets forth "the changes involved and the price thereof" and is "executed by both Veteran Pacific and the Subcontractor." (Contract, ECF No. 24, Ex. A, § 4.1.) And although a change order may be valid where the parties have not reached agreement on price, in all cases it appears written direction by Veteran Pacific was required. (*Id.* at § 4.5.)

While these limitations may have some bearing on which, if any, of the change orders on which Roach seeks payment are valid, the defendants' argument is too general and insufficiently developed to permit any definitive ruling on the matter. Rather than point to specific change orders that they contend are invalid, the defendants cite to an exhibit consisting of some 73 pages of change orders covering a wide array of materials and work. The exhibit apparently includes the disputed change orders, but it is not clear which are the subject of their motion. The court is

16

reminded of Chief Judge Easterbrook's comment that "Judges are not like pigs, hunting for truffles buried in briefs," *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991), or elsewhere in the record. In any event, while it may be true that many of Roach's change orders are invalid, the determination of which are invalid must await trial. Accordingly, this aspect of the defendants' motion for partial summary judgment is also denied.

### 6. Roach Concrete's Motion for Partial Summary Judgment

Roach moved for summary judgment on its claims for breach of contract, violation of the Miller Act, and prejudgment interest pursuant to Wis. Stat. § 628.46. Roach's motion primarily is an invitation to the court to adjudicate the merits of a part of its damages claim. While it acknowledges that "there are genuine disputes as to certain change orders that are included" in its total claimed damages amount of $586,098.10, Roach argues that "there is no genuine dispute concerning other change orders" and that, therefore, it is entitled to "at least $168,033.60." (Pl. Br. in Supp. 5-6, ECF No. 52.)

Much like JV's request to serve as an editor in its motions to strike, Roach here is requesting that the court serve as an auditor to resolve which change orders are valid and the amounts due, and issue an order determining that Roach is owed at least $168,033.60. Again, Judge Easterbrook's observation comes to mind. Partial summary judgment is a useful tool for narrowing issues, such as an issue of liability. And Rule 56(a) specifically allows a party to bring a motion for partial summary judgment, which is better termed as a partial summary adjudication, on part of a claim. Fed. R. Civ. P. 56(a); *see also* 10B Wright, Miller & Kane, FEDERAL PRACTICE AND PROCEDURE: CIVIL 3d § 2737, at 322-24. But given the multiple factual disputes over the change orders, which ones are valid, and whether JV already paid directly to second tier subcontractors the sums claimed

17

to be due (*see* Defs. Br in Opp'n 8-10, ECF No. 57), these are not appropriate issues on which to grant partial summary judgment.

Roach's motion for summary judgment on JV's counterclaim will also be denied. Roach asserts that summary judgment should be granted because JV cannot prove that Roach breached the subcontract and, in particular, cannot prove what damages it sustained. Roach's arguments are predicated on its contention that JV violated its obligations under Rule 30(b)(6) to designate a witness that could testify to the topics described in Roach's deposition notice. Roach asserts that Ike Hong and Michael Gerhardstein, JV's Rule 30(b)(6) designees, were not sufficiently prepared to testify on a number of topics, including the amount of damages that were caused by Roach's breach. Roach argues that JV should be precluded from presenting evidence on those subjects which relate to JV's counterclaim that Hong and Gerhardstein allegedly failed to adequately address in their depositions. In addition, Roach argues in its motion in limine that "entire categories" of documents that support JV's counterclaim have not been disclosed as required by Rule 26(a) & (e). (ECF No. 45, at 4-5.)

Substantively, there are material disputes as to whether Roach breached the contract in view of JV's allegation that Roach caused delays and failed to make timely payments to its second tier subcontractors. For instance, JV accuses Roach of causing material delays in the project that increased costs from "winter conditions," resulting in $400,225.11 in damages. (Defs. Resp. SOF ¶ 30, ECF No. 58.) JV contends that in many cases, it had to make direct payments to second tier subcontractors because Roach failed to pay them with the result that a portion of the amounts Roach claims it is owed was already paid directly to the second tier subcontractors. In addition, JV asserts that it incurred back-charges in the amount of $78,080.00 as a result of Roach's failure to timely pay

Case 1:10-cv-00826-WCG   Filed 04/22/13   Page 18 of 22   Document 74

its second tier subcontractors. (*Id.* ¶ 28.) Because JV found it necessary to pay the second tier subcontractors directly, and due to the back-charges, JV claims that it overpaid Roach in the amount of $214,581.90. (*Id.*)

Roach, in its motion in limine, asserts that it propounded discovery requests for documents and interrogatories on JV in order to determine what evidence supported its counterclaim. Roach states that it did not receive from JV any evidence of what damages were owed as a result of the claimed breaches it caused in connection with the back-charges and the winter conditions. JV submitted, as part of its response to Roach's motion for summary judgment, affidavits from Gerhardstein and Hong along with a host of documents in support of its claim to damages. (Gerhardstein Aff. ¶¶ 11-25 & Exs. 1-3, ECF No. 62; Hong Aff. ¶¶ 13-17 & Exs. 1-17, ECF No. 64.) Roach does not argue that the documents attached to Gerhardstein and Hong's affidavits were not previously disclosed during discovery. Instead, Roach narrowly argues that Gerhardstein and Hong did not sufficiently address the topics related to JV's counterclaims in their depositions. (*See* Pl. Reply 3-5, ECF No. 72.)

Roach's arguments are not convincing. The documents submitted as part of Gerhardstein and Hong's affidavits support JV's damages claims and the court cannot conclude based on the record before it that these documents were not previously disclosed during discovery. Both Hong and Gerhardstein also testified that they prepared for their depositions. (Gerhardstein Aff. ¶ 26, ECF No. 62; Hong Aff. ¶ 17, ECF No. 64.) While Roach argues that JV's 30(b)(6) designees were not adequately prepared to testify on five topics, it does not contend that JV's designees were inadequately prepared to testify on the other twenty-four topics in the deposition notice. (Dep. Notice, ECF No. 44-5.) Thus, this is not a situation where Hong and Gerhardstein's testimony was

19

so deficient as to amount to a total failure to appear. *See, e.g., Resolution Trust Corp. v. Southern Union Co., Inc.*, 985 F.2d 196, 197 (5th Cir. 1993) (where two designated witnesses had no knowledge of ten topics set forth in deposition notice). In addition, Roach did not dispute the adequacy of the testimony until it brought its motion for summary judgment. Roach could have sought a motion to compel discovery, requesting JV designate a different witness who could adequately testify, or request another deposition. Roach's lack of diligence in seeking additional discovery and its delay in bringing the issue to the court's attention after the close of discovery militates against an award of sanctions. *See Gutierrez v. AT&T Broadband, LLC*, 382 F.3d 725, 733 (7th Cir. 2004). Nor does it appear that JV failed to prepare its witnesses such that it could be characterized as acting willfully or in bad faith. *See, e.g., In re Anthracite Coal Antitrust Litig.*, 82 F.R.D. 364, 369 (D.C. Pa. 1979) (finding that the corporate defendants willfully failed to appear at noticed deposition by designating witnesses who refused to testify by asserting Fifth Amendment privilege).

Ultimately, the court concludes that the sanction of excluding JV's evidence in support of its claim for damages is not warranted. In reviewing those portions of Gerhardstein's deposition submitted by Roach, it is clear that he was prepared to testify on the topic of which change orders were disputed. (*See, e.g.*, Gerhardstein Dep. 167:2-17, ECF No. 44-6) Although Gerhardstein was not able to answer some questions, on the whole, his answers were sufficiently responsive to the questions he was posed and his answers illustrate that he was adequately prepared. The same is true for Hong's deposition. (*See, e.g.*, Hong Dep. 13:5-25, ECF No. 44-7.) The material is substantial and relates to event that transpired some five years ago. Rule 30(b)(6) witnesses are expected to be prepared; they are not expected to have photographic or computer-sized memories.

Roach also argues that JV cannot rely on the breach caused by Roach, pushing the construction into "winter conditions," as an affirmative defense because JV waived the breach by insisting on performance. As noted above, in the face of a material breach, a non-breaching party may either immediately cancel the contract and sue on the breach, or may elect to excuse the breach and continue the contract. What the non-breaching party cannot do after a waiver is cancel the contract or later rely on the breach in an effort to avoid its own obligations under the contract. *See* RESTATEMENT (SECOND) CONTRACTS § 236 cmt. b.; *see also* CALAMARI & PERILLO ON CONTRACTS § 15.3 at 624 (5th ed. 2003) ("If an election to cancel is not made, the contract continues to bind both parties and the non-breaching party may recover damages for partial breach"). But electing to waive a breach does not mean that the non-breaching party is electing to dispose of its claim to damages flowing from the breach. *See id.* It is apparent that JV is not utilizing Roach's breach of contract to escape its own obligations to make payments, but rather is attempting to rely on the subcontract terms to excuse its obligation to pay Roach's claims. (*See* Gerhardstein Aff. ¶ 25, ECF No. 62.)

In sum, JV alleged in its counterclaim that it sustained damages when Roach failed to render timely performance, resulting in delays. JV claims that it paid $400,225.11 to provide temporary structures to allow Roach to complete the concrete work during winter conditions. (Defs. Resp. SOF ¶ 30, ECF No. 58.) Roach asserts that JV was responsible for the delays because it was preoccupied with completing a separate construction project. Additionally, JV alleges that it overpaid Roach in excess of $214,000 after making direct payments to Roach's subcontractors and incurring back-charges. Roach argues that its inability to make timely payments to its subcontractors was created by JV's wrongful withholding of payments to Roach on otherwise valid change orders. Here, there

21

are genuine disputes between the parties as to whether Roach was in fact responsible for delays in the construction timetable, whether it was responsible for not submitting timely payments to its subcontractors, and the amount of damages JV incurred. Furthermore, JV has come forward with evidence in the form of Gerhardstein and Hong's affidavits with supporting exhibits, which sufficiently establishes that there is a genuine issue of fact concerning its counterclaim. *See Modrowski v. Pigatto*, __ F.3d __, 2013 WL 1395696, at *2-3 (7th Cir. Apr. 8, 2013). Accordingly, Roach's motion for summary judgment on JV's counterclaim is denied.

**CONCLUSION**

JV's motion to strike (ECF No. 60) the declaration of Michael Roach is granted. JV's remaining motions to strike (ECF Nos. 61, 70 & 71) are denied. Roach's motion in limine (ECF No. 44) is denied and both parties' motions for summary judgment (ECF Nos. 51 & 48) are denied. The Clerk is directed to set this matter on the Court's calendar for further proceedings.

**SO ORDERED** this __22nd__ day of April, 2013.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court